## No. 2591

### Second Circuit

, LETT, ET AL., v. SMITH

SMITH v. LETT, ET AL.

#### Consolidated Cases

(November 6, 1926. Opinion and Decree.)
(February 12, 1927. Reversed on Rehearing.)
(March 28, 1927. Writs of Certiorari and Review Denied by Supreme Court.)

*(Syllabus by the Editor)*

1. Louisiana Digest—Physicians—Par. 6.

Physicians are not obligated to secure good results, and when the physician possesses such knowledge as the physicians in good standing in the same neighborhood, and follows the usual practice, he is ordinarily entitled to recover for his services, although

the treatment did the patient an injury.

2. **Louisiana Digest—Physicians—Par. 4.**

Where the testimony as to the negligence of physicians in charge of the application of X-rays shows that they followed the usual formula adopted by physicians, the physicians were not negligent in handling the X-ray machine.

3. **Louisiana Digest—Evidence—Par. 297.**

Evidence of experts showing that where X-ray machines are used in conformity with the formula prescribed will not ordinarily cause burns is only preliminary proof tending to make out a case for the application of a rule of res ipsa loquitur, but does not show that that doctrine is applicable.

4. **Louisiana Digest—Evidence—Par. 297; Negligence—Par. 42.**

Although expert testimony that where an X-ray machine is used with the formula adopted by the profession a burn would not occur would be preliminary evidence to establish a case for the application of the doctrine of res ipsa loquitur; nevertheless, the question of negligence would depend upon the weight given to the opinions of experts as to whether the burn could or could not be inflicted where the machine was properly used.

5. **Louisiana Digest—Evidence—Par. 342; Physicians—Par. 4.**

Evidence showing that the X-ray machine is commonly used by the medical profession and that the defendants had received instructions as to the mechanism and adjustment of the machine, and that they had operated X-ray machines and were regarded by other physicians as competent to operate the machine tends to show that the defendants were not negligent in the operation of the machine.

6. **Louisiana Digest—Physicians—Par. 4; Negligence—Par. 42.**

Where there is no evidence that the treatment for an X-ray burn was improper, although it would have been better for them to have operated and removed the burned flesh, the physicians being regarded as careful and skillful practitioners, their treatment of the burns will not have been proven negligent.

7. **Louisiana Digest—Negligence—Par. 42; Evidence—Par. 297.**

The testimony of one not familiar with the X-ray machine that the patient was placed against the machine for a period of 30 or 35 minutes will be outweighed by that of the doctors who were familiar with the machine and testified that they were well within the limit of the formula of the profession for operating the X-ray.

## ON REHEARING

### (Syllabus by the Court)

8. **Louisiana Digest—Physicians—Par. 4.**

A physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible. He is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by members of his profession in good standing practicing in similar localities; and it is his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning, and to act according to his best judgment.

9. **Louisiana Digest—Physicians—Par. 5.**

The converse of the above proposition is equally true, that is, that a physician is liable for failure to conform to the proper standard, if injury result to a patient.

10. **Louisiana Digest — Physicians — Par. 4, 5.**

A person undertaking the use of X-rays is held to the same measure of responsibility as in administering other forms of medical treatment. He impliedly contracts with the patient that he possesses the ordinary skill and learning of members of his profession and that he will exercise reasonable skill, care and diligence in his treatment.

**11. Louisiana Digest—Evidence—Par. 297, 352.**

The testimony of an expert on matters pertaining to his profession is necessarily entitled to more weight than that of a layman who has no knowledge of such matters. But a physician's testimony, for instance as to the time a patient was exposed to X-rays, and the distance of the patient's body from the X-ray machine during the exposure, has no more weight than that of a layman, the layman being as capable to judge such matters as the physician.

**12. Louisiana Digest — Negligence — Par. 41, 42.**

The doctrine res ipsa loquitur, in its broadest sense, does not apply to physicians or radiologists, and courts will not go to the extent of holding that the results of treatment or an injury resulting from the use of X-rays, alone, in the absence of other testimony showing negligence, are sufficient to speak the negligence.

**13. Louisiana Digest—Evidence—Par. 297; Negligence—Par. 42.**

Where the testimony of expert radiologists shows that an X-ray machine, when properly used, is a harmless agency and will produce no injury, and that an improper use thereof is fraught with danger, the fact that the patient was injured is some evidence of negligence which the court may and should consider.

**14. Louisiana Digest—Negligence—Par. 42; Evidence—Par. 342.**

In cases where a patient receives a "third degree" burn from the use of X-rays, the court may consider the fact of the burn in connection with all the testimony in arriving at a conclusion as to whether the X-ray machine was improperly used.

(See Civil Code, Article 2315. Editor's note.)

Actions by Dr. F. M. Lett, et al., against W. Henry Smith and W. Henry Smith against Hardy & Lett, et al., consolidated for the purpose of trial.

There was judgment for plaintiffs, Dr. F. M. Lett, et al., and defendants, Drs. Hardy & Lett. The plaintiff in one case and defendant in the other, W. Henry Smith, appealed.

Judgment affirmed in case of Dr. Lett, et al., against W. Henry Smith.

Judgment reversed in case of W. Henry Smith against Hardy & Lett, et al., but on rehearing the judgment of the trial court affirmed.

John R. Hunter and L. M. Ford, of Alexandria, attorneys for Dr. F. M. Lett, et al., plaintiffs and defendants, appellants.

G. L. Porterie, John H. Overton, of Alexandria, attorneys for defendant and plaintiff, appellee.

WEBB, J. This action is brought by the plaintiffs, Dr. F. M. Lett, and the representatives of Dr. Hardy, against W. Heine Smith to recover for professional services rendered to defendant's wife, Mrs. Z. L. Smith.

We might say that this action is the sequel of the action of W. Heine Smith versus Drs. Lett and Hardy, No. 2191 on the docket of this court, and this day decided, in that the present action was filed subsequent to the action referred to, and in that the plaintiff's demands are based upon charges made for services rendered in the treatment in which the physicians were charged with malpractice in the action of W. Heine Smith versus Drs. Lett and Hardy.

The defense interposed in this action was the alleged cause of action in the suit referred to and the two cases were consolidated for trial with the consent of coun-

sel, and judgment in allowing the plaintiff to recover the amount claimed, and go as an offset on the judgment rendered in favor of W. Heine Smith in his suit against the physicians.

## OPINION

The circumstances out of which this action grows are stated in the opinion rendered in the case of W. Heine Smith versus Drs. Hardy & Lett, with the exception that some of the services for which the plaintiffs here are seeking to recover were rendered prior to the time the physicians examined Mrs. Z. L. Smith with the X-ray machine on November 12, 1922.

The services for which compensation is claimed may be separated as follows:

Services rendered for consultations and visits prior to November 12, 1922 _____ $ 71.50
Services for examination on November 12, 1922, with X-ray machine ___ 25.00
Services for treatment of burn from November 11, 1922, to February 11, 1923 _____ 117.45

Total _____ $213.95

The physicians were undoubtedly entitled to recover for the services rendered prior to November 12, 1922, amounting to $71.50, and we shall confine ourselves to the discussion of their right to recover for the services rendered in connection with the X-ray examinations, and services rendered in treating the burn which was inflicted by the X-rays at the time of the examinations.

Unquestionably physicians are not obligated to secure good results. An infinite number of circumstances and conditions may arise which may render the most skillful treatment without effect upon one person, which had been effective in the treatment of others suffering with ailments having a close resemblance, and when the physician possesses such knowledge as physicians in good standing in the same neighborhood, and follows the usual practice, he is ordinarily entitled to recover for his services, even though, as a matter of fact, the treatment did the patient an injury.

It appears to be held in some jurisdictions that a physician is entitled to offset the fees charged, even where he is held liable in damages for injuries resulting from his negligence and unskillfulness, (Physicians & Surgeons R. C. L., Vol. 27, pg. 417, No. 58), and under the facts shown there could be no question as to the physicians' right to recover for the service rendered in diagnosis made under the X-rays, and this leaves for discussion solely the amount charged for services rendered in treating the burn which was inflicted by the X-rays.

While, as stated, the physician is entitled in some jurisdictions to offset the value of the services rendered even against the amount awarded against him in an action for malpractice, but this liberal finding does not hold in this state (Theodore vs. Ellis, 141 La. 709, 75 South. 655), but as we have found that the physicians in the action which this defendant brought against the plaintiffs here, that negligence was not established on the part of the physicians, we find no legal reasons which would warrant us in refusing to allow the plaintiffs judgment for the services of the physicians in treating the burn.

It is therefore ordered, adjudged and decreed that the judgment appealed from, insofar as it allowed plaintiffs' claim, be affirmed and that there now be judgment in favor of the plaintiffs and against the defendant in the sum of two hundred and

thirteen and 95-100 dollars with legal interest from judicial demand and all costs of suit.

———

WEBB, J.  In this action the plaintiff seeks to recover judgment against Dr. Frank Lett, and the widow and heirs of Dr. Julian C. Hardy, in the sum of seventy-eight thousand seven hundred and thirty-two dollars, for damages alleged to have been suffered by Mrs. Z. L. Smith, wife of plaintiff, and plaintiff individually, as the results of injuries sustained by Mrs. Smith while under the treatment of Drs. Hardy & Lett.

On trial judgment was rendered against defendants in the sum of ten thousand dollars, and they appealed, the plaintiff answering the appeal and praying that the judgment be amended so as to allow him the full amount claimed, and, as amended, affirmed.

### OPINION

The evidence establishes that Mrs. Z. L. Smith, wife of plaintiff, consulted Drs. Lett & Hardy in July, 1922, and that they were of the opinion that she had an ulcer of the stomach and advised that an X-ray examination be made.  They informed her that they were going to install an X-ray machine in the hospital conducted by them, and Mrs. Smith decided to wait until the the installation of the machine and for the examinations to be made by the physicians, Drs. Lett & Hardy.

The X-ray examinations, flouroscopic examinations and skiographs of the stomach were made on two occasions, in the morning and afternoon of November 12, 1922.

The morning examination was conducted by Drs. Hardy & Lett; in the flouroscopic examination, Dr. Hardy having control of the current or rays, and of the flouroscope, Dr. Lett attending to the adjustment of the machine, and position of the patient, and the skiagraphs were made by Dr. Lett, Dr. Hardy being present.

The afternoon examination, flouroscopic and skiagraphs, were made by Dr. Carney, who conducted the examinations with the consent of Drs. Hardy and Lett and in their presence.

Four or five days after the examinations a blister or burn appeared on the body of Mrs. Smith where the rays had penetrated, and she was treated for this burn by Drs. Hardy & Lett until about February 11, 1923, when she went to the Touro Infirmary at New Orleans, where she was attended by Dr. Gessner who, after some local treatment, operated or excised the wound caused by the burn, on or about March 1, 1923.

Following the operation Mrs. Smith appears to have made a marked improvement, but had not sufficiently recovered to be discharged by the physician, but as she was tired of staying at the hospital, Dr. Gessner, some time in May, 1923, advised that she take a trip to the country, and, acting on this, Mrs. Smith left the hospital and visited with relatives in the country, being in charge of a physician at that place.

In a short time, about ten or twelve days after her visit to the country, Mrs. Smith became very ill and was removed to the Touro Infirmary, and a diagnosis revealed that she had pellagra, where she died on July 14, 1923.

The evidence establishes that X-ray machines are commonly used by physicians in their practice, and that when in the hands of competent operators they are not regarded as dangerous.

It appears from the evidence that, in the use of such machines for diagnostic purposes, the object is to obtain such penetration of the rays as will cause a clear shadow of that portion of the body to be thrown upon a screen (which is visualized by the examiner with the use of a flouroscope) or to be impressed upon a sensitive plate placed under the body.

That in preparing for flouroscopic examinations the room in which the machine is located is darkened and the patient is brought into the room and placed in a standing position before the machine, and that part of the body to be examined is laid bare and the rays projected against the naked body, causing a shadow to be thrown upon the screen, and that the rays are intermittently thrown on and off during the flouroscopic examination, and that in making skiagraphs (which usually follow the flouroscopic examination) the room is lightened so that the machine may be adjusted and the patient is placed upon a table in a reclining position with a sensitive plate underneath the body, at the point to be photographed, so that the rays penetrating the body will cast a picture upon the plate.

That in the use of the X-ray machine in making flouroscopic examinations and skiagraphs, there are certain factors, such as the intensity of the rays, the distance of the patient from the point of emission, the time of exposure and the intervals between exposures, which must be regarded, and that the profession, having regard to these factors, has formulated a rule, which, if followed to an approximate degree, will not usually produce a burn, but that the profession recognizes the danger of burns being inflicted even when the formula is followed, due to the fact that some persons are more sensitive to the rays than others, caused by diseases or idiosyncrasies, with which the patient suffers, or that are peculiar to them, and it is customary for the examiner or operator of the machine to watch the patient during the process of raying, and when any unusual reaction to the rays is indicated by the patient, for the operator to discontinue the application of the rays.

The plaintiff alleges that the physicians were negligent in using a dangerous machine with which they were not familiar and incompetent to operate, that they were negligent in the application of the rays, in failing to follow the usual practice, that they did not pay the proper attention to the patient during the process of raying, and that their treatment of Mrs. Smith after the burn was inflicted was not in accord with the best practice of the profession.

The testimony of the witnesses called by the parties is conflicting, and before considering this testimony as to its preponderance, we will state that it is shown that the physicians had full control of the machine and of the patient during the examination, and, as previously stated, the evidence also establishes that a formula has been established by the profession for the application of the X-rays which is recognized by the profession and which, if followed, a burn will not usually result.

That the testimony as to the negligence of the physicians, as to the charge of negligence in the application of the rays, was directed toward showing that they did not follow the usual practice, in that they did not follow the formula adopted by the physicians, and in this connection two of the experts, in testifying as to the factors claimed to have been used by Dr. Lett, were of the opinion that they could not understand how the burns could have been inflicted with the use of such factors, their testimony being, in part, as follows:

Dr. Fortier:

"Q. Doctor, from your experience as a radiologist and from your reading upon the subject, do you know of any case or can you point out any case, where a patient has suffered a third degree burn, where the patient was exposed under the following factors: Spark gap, five inches; mille amperage, five; filter, one millimeter aluminum; distance, twenty-three inches; total time of exposure, one and a half minutes during a period covering two or three hours?

"A. No.

"Q. Then, doctor, am I correct in concluding that the converse of that proposition is true, that if a patient has suffered a third degree burn, those factors did not exist just as I have given them to you? Is not that correct? That follows as a natural sequence, does not it, doctor?

."A. I don't get what you are driving at there.

"Q.. Well, I will rephrase it. If a patient has suffered a third degree burn, is it not true that the fact that the patient suffered a third degree burn is evidence, in itself, that the patient was not exposed within the following limits, respect to factors, namely: Spark gap, five inches; mille amperes, five; filter, one millimeter aluminum; distance, twenty-three inches; total time of exposure, one and a half minutes, covering a flouroscopic examination of two or three hours?"

This was permitted over the objection of defendants, as follows:

"A. I do not see how a patient receiving those factors could possibly have received a third degree burn."

Dr. Bowie:

"Q. You spoke of the dosage being exceptionally mild in the factors given to you by Mr. Hunter and Mr. Ford (counsel for defendants) in their examination of you, and I am going to ask you this question: Can you scientifically conceive of the infliction of a third degree burn under the factors that they gave you in their examination?

"A. No, sir."

The plaintiff's counsel contend that in considering the evidence, the doctrine of res ipsa loquitur should be applied, and, if not, that the testimony of the experts as to the probability of a third degree burn being inflicted where the application of the rays were made as claimed by Dr. Lett should be considered either as tending to rebut the testimony of Dr. Lett or as supporting the testimony of Mr. W. Henri Smith, they being the only witnesses who attempted to give the factors which were used by the physicians in the application of the rays.

Many decisions from other jurisdictions have been cited by the parties as to the application of the doctrine of res ipsa loquitur in actions for damages against physicians, where the application of the rays has resulted in burns and injuries to their patients, and without reviewing these decisions we may state that they sustain the respective contentions of the parties.

In those cases where the doctrine is held to be applicable, the court appears to have considered the question more especially with relation to the doctrine in its general application as a rule of evidence, without regard to the rule that the obligation of physicians is that they have the ordinary skill of members of the profession in good standing in like localities and that they will exercise reasonable care and diligence in their treatment. (R. C. C., vol. 21, p. 381, No. 27, Physicians and Surgeons; Stern vs. Lanng, 106 La. 737, 31 South. 303; Gouner vs. Brosnan, 165 La. 1, 98 South. 681); and that where it appears that the treatment has been in the manner followed by the medical profession generally, the physician is not responsible for results (Gouner vs. Bros-

nan, supra); while the decisions in which it was held that the doctrine was not applicable have been considered with reference to the rules of law governing the obligations of physicians toward their patients.

In the cases cited no attempt is made to draw any distinction between the obligations or duty of a physician when using the X-ray machine in the treatment of diseases and when using it for diagnostic purposes, and as counsel do not claim that any distinction should be made, and as we have been unable to find any decision in which such distinction has been made, we assume that it is conceded that if the doctrine is not applicable in cases where the X-ray machine is used for the purpose of treatment of disease, that it should not be applied where the machine is used as a means of diagnosis.

With this view, we find that in Ewing vs. Goode, 78 Fed. Rep. 442, where the doctrine was sought to be applied as against a physician, in an action for damages arising from an unexpected result following his treatment in giving drugs, the court said:

"If the maxim res ipsa loquitur were applicable to a case like this and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all of the ills that the flesh is heir to."

The use of X-ray machines by physicians in the treatment of diseases and as a means of diagnosis is very general and the use is not regarded by the profession, when in the hands of skillful operators, as any more dangerous than giving drugs by a competent physician.

In Nixon vs. Pfahler (Penn.) 124 Atl. 130, the court, having under consideration a case similar to the present, said:

"The X-ray machine is indispensable to the healing art, and the mere happening of an accident from its use creates no presumption against the instrument or its operation. It is necessary for those engaged in the medical profession to constantly employ dangerous agencies, like electricity, radium, poisons, etc., and if prima facie liability attaches from the use of the one, logically it should from the use of the other, and the practitioner employing such would be practically an insurer of his patients, which the law declares he is not."

The general obligation of the physician in his treatment of his patient is to follow the usual practice of the profession, and when so doing the law declares that he is not responsible for results, and it seems to us that it would be rather paradoxical for the result of the treatment to be considered as a circumstance in determining whether or not the physician had followed the usual practice, the law being that he is not responsible for results.

"The rules governing the duty and liability of physicians and surgeons in the performance of professional services are applicable to practitioners in the kindred branches of the healing art, such as dentists, oculists and manipulators of X-ray machines." (R. C. L., vol. 21, p. 386, No. 31, Physicians and Surgeons.)

The plaintiff further contends that even if the doctrine is not applicable, that in view of the testimony given by the experts, Doctors Fortier and Bowie, quoted above, that, in the consideration of the evidence, this testimony must be considered as rebutting the testimony of Dr. Lett, and as going to establish that Dr. Lett, in applying the rays, did not use

the factors claimed to have been used by him.

In Stemons vs. Turner (Penn.), 117 Alt. 922, an action against a physician for alleged negligence in the use of an X-ray machine for diagnostic purposes, the trial court charged the jury as follows:

"All of the physicians and the X-ray specialists agree that by a proper and careful use of a certain and well-recognized formula by the profession, which formula has been described and which you will recall, an X-ray burn could not occur. Defendant says he used a formula of even less intensity than that. Obviously, therefore, if the defendant did use the formula which he says he dd, then his application of the X-ray did not cause an X-ray burn of the plaintiff's groin, and this defendant was the only person who ever X-rayed the plaintiff's groin, then you would be justified in concluding that, while the defendant told you he used the X-ray according to a harmless formula, he was not telling you the truth, and that, on the other hand, the formula that he did actually use was a negligent and improper formula under the circumstances."

And the Supreme Court said:

"This applied the rule res ipsa loquitur to the case, and permitted the injury to plaintiff, and nothing else, to speak the negligence; a rule which we have said does not apply as between doctor and patient."

Res ipsa loquitur is a rule of evidence which in certain cases makes the injury for which damages are claimed on the grounds of negligence, a circumstance to be weighed with the other evidence tending to establish negligence, and is applicable only where it has been established that the instrumentality or means through which the injury was inflicted is shown to have been in control of the defendant, and the accident or injury will not ordinarily occur when the instrumentality has been properly handled.

As previously stated, the evidence of the experts established that where the X-rays are used, having regard to the formula, a burn will not usually result; this evidence in itself could be considered only as going to establish the basis for the application of the doctrine res ipsa loquitur, and although the testimony of the experts, as quoted above, if considered alone, without regard to their evidence as a whole (which we are of the opinion shows that they were not certain that a burn would not be inflicted in some cases, where the formula was followed), could be said to have laid a very firm foundation upon which to rest the doctrine of res ipsa loquitur, it could not be considered as anything else than preliminary proof, tending to make out a case for the application of the rule, and, if the rule is not applicable in an action against physicians, we do not think the evidence going to make out a case where the rule could ordinarily be applied can be considered.

In Sweeney vs. Ewing, 228 U. S. 232, 57 Law Ed. 815, the court said:

"In our opinion res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for an explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. Where all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

In the present case there was testimony offered which tended to show that, where the operator of an X-ray machine used the

formula adopted by the profession a burn would not occur, and if such evidence could be considered in any other respect than establishing a case for the application of the doctrine res ipsa loquitur, it appears to us that in the last analysis the question of negligence would depend upon the weight to be given to the opinions of the experts as to whether a burn could or could not be inflicted where the machine was properly used, which would be to give greater weight to the evidence going to make out a case for the application of the doctrine than could be given in applying the doctrine itself.

We are therefore of the opinion that the doctrine of res ipsa loquitur is not applicable, and that any testimony, such as that quoted above, must be considered as going to lay the basis for the application of the doctrine, and that the doctrine not being applicable such evidence cannot be considered as having any weight in determining the question of negligence.

The specific charges of negligence may be paraphrased as follows:

1. That the physicians, Drs. Hardy and Lett, were not familiar with the mechanism and technique of the machine and incompetent to operate same, and that the burn was the result of their using a machine which the profession recognizes as dangerous, which they were incompetent to operate.

2. That the physicians were negligent and unskillful in their treatment of Mrs. Smith after the burn had been inflicted.

3. That they were negligent and unskillful in the application of the rays, in that:

(a) They did not use the formula adopted by the profession in their application of the rays, having placed the patient too near the tube or point from which the rays were emitted; that the exposure was for too long a time; and

that the intervals between the exposures were too short.

(b) They failed to pay the proper attention to the patient during the examination and to note her reactions to the rays, which, if noted, should have been a warning to them to discontinue the examinations.

(1) In support of the first charge, it was shown that an X-ray machine is regarded as dangerous when in the hands of incompetent operators, and that the physicians had very recently installed the machine in the sanitarium operated by them; but, on the other hand, it was shown that such machines are commonly used by the profession in their practice, and that Drs. Hardy and Lett had received instructions as to the mechanism and adjustment of the machine, and that they had operated X-ray machines, and were regarded by those physicians who were called as to their qualifications as competent to operate the machine.

The qualifications and competency of the physicians to have used the X-ray machine must be determined upon the testimony of the experts, and considered from the evidence offered the charge is not proven.

(2) On the charge of negligence in treating Mrs. Smith after the burn was inflicted, the evidence establishes that Drs. Hardy and Lett had received, at the least, the usual course of training, and that they were regarded by the profession as able, careful and skillful practitioners, and there is no evidence by any physician that the treatment administered by them after the burn had been inflicted was improper, and although it may be (as the event may indicate) that it would have been better for the physicians to have operated and removed the burned flesh immediately following their knowledge of the burn, we

may not assume, in default of evidence, that the operation would have been immediately made by other members of the profession in good standing and that the defendants were negligent in failing to operate immediately.

(3) Relative to the charge of negligence in the application of the rays, the plaintiff does not claim that the factors used in the afternoon when the machine was in charge of Dr. H. E. Cárney of the X-ray department of the United States Hospital at Alexandria were improper, but it is contended that the factors used at the morning examination when Drs. Lett and Hardy were in charge of the machine and conducting the examination were not in accord with the established usage.

At the morning examination, the evidence shows that the flouroscopic examination was made by Dr. Hardy, who had control of the current, Dr. Lett assisting in placing the patient in front of the tube and adjusting the machine, and that the skiagraphs were made by Dr. Lett, who had charge of the machine and applied the rays.

Dr. Lett states that the factors used in the flouroscopic examination were spark gap, five inches; milleamperes, three, the latter being changed to five during the examination; filter, one millimeter of aluminum; distance of patient from tube, twenty-three inches; and total duration of exposure, one and one-half minutes; and for the skiagraphs, spark gap five and one-half inches; milleamperes, twenty; distance of patient from tube, twenty inches; and time of exposure, one second each for two exposures.

Mr. W. H. Smith testified that the patient was placed against the machine and that the number of exposures was five and total time of exposures thirty to thirty-five minutes.

The experts who were called to testify in the case said that the factors stated by Dr. Lett to have been used by the physicians were well within the limit of the formula, and that the dosage was very mild, and that with the usage of such factors a burn could not have been reasonably expected, but they agree that if the time of the exposure as stated by Mr. Smith was correct, a burn should have been expected.

We find that the testimony of Mr. Smith indicates that he did not know from what point the rays were emitted, and conceding that he was competent to testify as to the manner in which the rays were applied, it being the first time that he had witnessed the operation of the machine, the mechanism of which he was totally unfamiliar with, we consider that Dr. Lett was the more competent witness, he being familiar with the machine and its operation and being in attendance upon his patient, and that this charge of negligence is not proven.

On the charge that the physicians were negligent in not paying proper attention to Mrs. Smith and noting her reactions to the rays, it is shown that where any reaction takes place, such as a discoloration of the skin at the point where the rays were applied, that the operator should not make any further application of the rays, and the plaintiff contends that after the morning examination, and while Mrs. Smith was waiting at the sanitarium for the evening examination, that a discolored splotch appeared upon her body, and that, when she was taken into the room where the X-ray machine was located, that she called the attention of the physicians,

Drs. Lett and Carney, to the discolored splotch upon her body.

In support of this contention Miss Snoddy testified that she had noted a scar or pinkish spot on Mrs. Smith's body while the latter was in the room lying down waiting for the afternoon examination, and Mr. W. H. Smith testified that he had also noted a discolored splotch at that time, and Mrs. M. E. Smith, mother of plaintiff, and Mr. W. H. Smith testify that Mrs. Z. L. Smith told the physicians, Drs. Carney and Lett, when she was being prepared for the examination in the afternoon, that she had been burned, and parted her gown and showed them the discolored splotch.

Drs. Lett and Carney denied that Mrs. Smith had made any such remarks, and Dr. Carney, who made the flouroscopic examination and skiagraphs, testifies that in making the application of the rays the body at the point to be examined is laid bare and that there was no discoloration on the body of Mrs. Smith.

The physicians, especially Dr. Carney, who was watching the patient, were in a better position to have seen whether or not there was any discoloration on the body of the patient at the point where the rays were being projected against her body, as the room was darkened and any discoloration of the skin could not have been seen, only under the light of the ray, and as to the statement said to have been made by Mrs. Smith, the evidence is certainly equally balanced.

We are, therefore, of the opinion that the doctrine res ipsa loquitur not being applicable, the plaintiffs have failed to establish negligence.

This view of the case renders it unnecessary to consider the evidence offered in support of the plea that Mrs. Smith had pellagra and was therefore more susceptible to be burned by the rays than a normal person.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed and that plaintiff's demands be rejected at his cost.

## ON REHEARING

ODOM, J. Plaintiff's wife, Mrs. Z. L. Smith, consulted Dr. Frank M. Lett and Dr. Julian C. Hardy, seeking advice and treatment for some physical ailment or disease from which she was suffering.

The physicians advised the use of the X-ray for diagnostic purposes and informed Mrs. Smith that they would soon equip their office with an up-to-date approved X-ray machine, and asked her to wait until the arrival and installation of their machine.

Mrs. Smith and her husband agreed to the use of the X-ray for such purposes and to await the arrival of the machine.

Upon the arrival and installation of the X-ray machine Mrs. Smith was advised that the physicians were ready to make the examination. She went with her husband to the sanitarium owned and operated by defendants, where the physicians, with the assistance of Dr. Carney, applied the X-rays to certain portions of her body, the flesh being laid bare for that purpose.

She received, as a result of the application of the rays, what physicians call a "third degree burn", from which she suffered excruciating pain and agony over a long period of time and finally died. Whether death resulted as a direct cause of the burn need not be considered in this

action. It is sufficient to state that, as a result of the burn, she was carried to Touro Infirmary in New Orleans, where she was treated over a long period of time by eminent specialists who excised or cut away the burned portions of her body in order to relieve her suffering and to heal the wound caused by the burn.

The husband, plaintiff herein, brings this suit for damages resulting from malpractice, alleging that the X-ray burn and resulting injury were caused by the negligent, careless and improper use of the X-ray.

The defense is that the use of the X-ray is proper practice in their profession and that the X-ray machine was used carefully and properly and that the burn was not due to any fault or negligence on their part.

The suit is grounded upon the proposition that the physicians were careless and negligent in the use of the X-ray machine.

It is defended solely upon the ground that the rays were administered according to approved formula and method and that the burn was not the result of improper, negligent use of the machine.

The rule of universal application in malpractice cases is set forth in 30 Cyc. 1570 as follows:

"A physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible. He is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by members of his profession, in good standing, practicing in similar localities, and it is his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning and to act according to his best judgment."

Roark vs. Peters, 2 La. App. 448; (same case, affirmed by Supreme Court, 162 La. 111, 110 South. 106).

The converse of the above proposition is equally true; that is, that a physician:

"Will be liable for a failure to conform to the proper standard if injury results to a patient."

30 Cyc. 1575.

A license to practice medicine confers no immunity to a physician from liability to a patient if the practitioner fails to exercise due care.

With reference to liability for injury by the use of the X-ray, the following rules are laid down in a case note following the case of Runyan vs. Goodrum, 13 A. L. R. 1414:

"A person undertaking the use of X-rays is held to the same measure of responsibility as in administering other forms of medical treatment. He impliedly contracts with the patient that he possesses the ordinary skill and learning of members of his profession and that he will exercise reasonable skill, care and diligence in his treatment."

In support of the rule there are cited cases from the District of Columbia, Iowa, Maine, Minnesota, Missouri, Virginia and Washington.

From these general principles there is no dissent.

Asserting that the physicians were learned and skilled in the use of the X-ray, it is contended by counsel for the defendants in this case that the testimony is not such as to warrant the court in holding that the physicians who used the X-ray for diagnostic purposes were guilty of negligence.

We think the testimony fairly shows that the physicians understood the use of the X-ray machine.

Dr. Lett, as a witness in his own behalf, stated that in applying the rays to his patient he used a certain formula.

Expert radiologists who testified for the defendants said that the formula which Dr. Lett says he used are generally accepted by those learned and skilled in the science.

Therefore, if the case is to be resolved against the defendants it must be upon the ground that they did not use the formula which they say they did and that they were careless and negligent in the use of the machine.

In this connection, it may be stated that there were two applications of the rays, one in the forenoon and the other in the afternoon. In the forenoon Dr. Hardy had charge and control of the current and Dr. Lett assisted by adjusting the machine and placing the patient in front of the tube. A second application was made in the afternoon, at which time Dr. Carney, of the X-ray department of the United States Hospital at Alexandria, was present and assisted.

But it is not claimed that the patient was burned during the time that Dr. Carney was present. It is claimed that she was burned in the morning. Dr. Carney, not being present in the morning, knows nothing of what was done at that time.

Therefore, the only physician to testify as to the use of the machine in the morning and as to what formula was used was Dr. Lett, Dr. Hardy, his partner, having died previous to the trial.

Dr. Lett testified that in applying the rays in the morning for the flouroscopic examination he used the following factors or furmula:     Spark gap, 5 inches; milliamperes, 3, being changed to 5 during the examination; filter, 1 millimeter of aluminum; distance of patient from tube, 20 inches; total duration of exposure, 1½ minutes; and for the skiagraphs: Spark gap, 5½ inches; milliamperes, 20; distance of patient from tube, 20 inches; time of exposure, 1 second each for two exposures.

According to the expert testimony, these factors are proper. Therefore, if, as a matter of fact, the physicians did use this formula in administering the rays, they are not liable under the law, even though the patient was injured.

But the testimony of Dr. Lett, who, as stated, was the only witness who testified that such factors were used, is emphatically disputed by that of the plaintiff, W. H. Smith, the only other witness who was present.

Smith says that instead of the patient being placed 23 inches from the tube, as Dr. Lett says she was, as a matter of fact she was placed against it; that instead of the exposures being from 1½ to 2 minutes, they were, in fact, 30 to 35 minutes in all; and that there were five exposures.

The organ of this court, who rendered the original opinion, was of the opinion that, inasmuch as Dr. Lett is an expert, his testimony as to what was done should be accepted as having more weight than that of Smith, who is a layman.

On that point it may be said that Dr. Lett's expert knowledge would enable him to give testimony on some points about which Smith, being a layman, could have no knowledge. For instance, Dr. Lett knew or should have known the length of the spark gap, the milliamperes used and the filter. Smith could know nothing about that. But on the other point, that

is, as to the number and length of time of the exposures and the distance of the patient's body from the machine, Dr. Lett is no more competent to testify than is Smith. Expert knowledge is not necessary to enable one to tell whether a human body is 2 or 20 inches from a certain object, or whether there were two or five exposures, or whether the patient was exposed two or thirty minutes.

It would therefore seem that, conceding that the two witnesses are of equal credibility, the testimony of Smith on the particular points about which he testified should be accorded as much weight as that of Dr. Lett on the same points.

In this connection it may be well to state that neither Dr. Lett nor Smith kept any record on these points, both testifying from memory.

With reference to the question, whether the proper factors were used, the fact should not be overlooked that Dr. Hardy was in charge of the current while Dr. Lett adjusted the machine to the body of the patient. Dr. Lett not being in charge of the current, we are not advised as to how he could know definitely about what current was used by Dr. Hardy. Dr. Hardy died previous to the trial, and so far as we know left no record to enlighten the court on this point.

We think it is established by a preponderance of the testimony that the burn was inflicted by the first application of the rays, that is, in the morning. Miss Snoddy and W. H. Smith testify that they had noticed a pinkish scar or splotch on the patient's body while she was lying in the room waiting for the afternoon examination.

Mrs. M. E. Smith, mother of plaintiff, and W. H. Smith testify that the patient told Drs. Carney and Lett, while she was being prepared for the afternoon examination, that she had been burned in the morning, and that the physicians were shown the discolored splotch.

Drs. Carney and Lett deny this. They say they saw no evidence of the burn, and deny that the patient called their attention to it.

The preponderance of the testimony, therefore, is that the patient was burned in the morning and that the physicians knew it previous to the afternoon examination.

As already stated, there were only two witnesses, Dr. Lett and W. H. Smith, who testify as to the factors used in the administration of the rays in the morning. Their testimony on certain very material and pertinent points is very conflicting.

According to the testimony of such experts as Dr. Fortier and Dr. Bowie, the matter of the distance of the patient from the machine and the length of time of exposure are highly important. These are the points about which Dr. Lett and Mr. Smith disagree.

All the experts agree that an exposure such as Mr. Smith says there was is improper; so that if Smith's testimony is accepted, defendants were grossly careless and negligent; whereas if the testimony of Dr. Lett is to be accepted as true, and there were no other testimony which the court could consider in determining the question as to whether or not there was negligence, the case would have to be resolved in favor of the defendants under the rule that the plaintiff has failed to make out his case by a preponderance of the evidence.

But we are of the opinion that in determining the question of negligence we are not restricted to the testimony of Dr. Lett and Mr. Smith but may consider all the facts and circumstances surrounding the case.

As to the results of the administration of the rays, there is no dispute; the patient received a "third degree burn". So far as the record discloses, Mrs. Smith was no more susceptible to burns from the X-ray than the average person. There is testimony that she died of pellagra, but the contention that she was a pellagran at the time the rays were administered and that she was therefore more susceptible to injury than the average person falls for lack of proof.

In defendant's answer we find the following admission:

"Further answering said paragraph, your respondents admit that an X-ray machine properly adjusted and handled is harmless in its effects and is productive of no bad results."

To this effect is the testimony of all the eminent expert radiologists called as witnesses for defendants. On the contrary, it is conceded that if an X-ray machine is not properly adjusted and handled it is a highly dangerous instrumentality.

Dr. Fortier, sworn as an expert for defendants, was asked:

"Doctor, from your experience as a radiologist and from your reading upon this subject, do you know of any case, or can you point out any case, where a patient has suffered a third degree burn, where the patient was exposed under the following factors: Spark gap, five inches; milliamperage, five; filter, one millimeter aluminum; distance, twenty-three inches; total time of exposure, one and one-half minutes during a period covering two or three hours?"

And he answered:

"No."

And, again:

"If a patient has suffered a third degree burn, is it not true that the fact that the patient suffered a third degree burn is evidence in itself that the patient was not exposed within the following limits with respect to factors, namely: Spark gap, five inches; milliamperes, five; filter, one millimeter aluminum; distance, twenty-three inches; total time of exposure, one and a half minutes; covering a flouroscopic examination of two or three hours?"

And he answered:

"I do not see how a patient receiving those factors could possibly have received a third degree burn."

Doctor Bowie, another eminent expert, was asked:

"You spoke of the dosage being exceptionally mild in the factors given to you by Mr. Hunter and Mr. Ford (counsel for defendants) in their examination of you, and I am going to ask you this question: Can you scientifically conceive of the infliction of a third degree burn under the factors that they gave you in their examination?"

And he answered:

"No, sir."

In view of the conflicting testimony of Dr. Lett and Mr. Smith, and under the admission and proof found in the record, as above stated, we think the fact of the burn may properly be considered by the court as a circumstance in connection with the other testimony in determining the question whether the defendants were negligent in the adjustment and handling of the X-ray machine.

But counsel for defendants contend, and we so held in our original opinion, that the doctrine res ipsa loquitur cannot be applied in suits against physicians for malpractice, and that, therefore, the court cannot, for any purpose, consider the fact that the patient in this case was burned.

Whether the doctrine of res ipsa loquitur may be applied in cases where injury results from the use of the X-ray by a physician is one which has received consideration by courts of last resort in several states of the Union.

In the case of Holt vs. Tenbrook, 134 Minn. 458, 150 N. W. 1073, the court held that the doctrine does apply, and that injury resulting from the use of the X-ray raises a presumption of negligent treatment.

See, also: Jones vs. Tri-State Teleg. Co., 118 Minn. 217; 136 N. W. 741; (40 L. R. A., N. S., 485).

In the case of George vs. Shannon, 92 Kan. 801, 142 Pac. 967, the court, in commenting on the charge given to the jury, said:

"Reduced to a sentence it is this. If the taking of such pictures in a proper and careful manner does not necessarily result in injury, then the fact that the injury does result is some evidence (it may be rebutted) that proper care and skill were not exercised. We see no error in the instruction."

In the case of Shockley vs. Tucker, 127 Iowa 456, 103 N. W. 360, it was contended that there was no evidence to show negligence on the part of the defendant in the use of the X-ray machine; but the court said:

"We think the fact that plaintiff was severely burned is some evidence in itself that the treatment was improper and it cannot be said that the verdict lacks support in this respect in the evidence."

In a leading case, that of Sweeney vs. Irving, reported in 43 L. R. A., N. S., 734, the Supreme Court of Iowa held that the fact that plaintiff was burned in the use of the X-ray was not of itself evidence of negligence in treatment.

That case was affirmed by the United States Supreme Court. (Sweeney vs. Irving, 228 U. S. 223; 53 Law Ed. 815.)

But the court did not pass upon the question, whether the doctrine of res ipsa loquitur applies in such case, but held that the rule, if applied, did not shift the burden of proof.

While the courts of some states seem to have gone the limit in the application of the rule of res ipsa loquitur in cases of X-ray burn, we cannot, in view of the holdings by the courts of other states, hold that the fact of the burn alone, in the absence of other testimony of negligence, is sufficient to warrant a finding of negligence on the part of a physician. In other words, we cannot permit the fact of the injury, and nothing else, to speak the negligence. That, we think, would be going too far.

But we do hold that where, as in this case, there is direct evidence that the operator of the X-ray machine did not use the approved formula, and where it is shown beyond question, as here, that the X-ray machine, when properly adjusted and carefully handled, is a harmless agency, and that the administration of the rays under proper formula will not ordinarily produce bad results, the court may consider the fact of the injury as a circumstance along with the other testimony in determining the question of negligence. To so hold is not an application

of the rule res ipsa loquitur in the sense in which it has been held not to apply to physicians and surgeons.

In the reported cases involving the questions here presented with reference to the use of the X-ray for treatment or diagnostic purposes, where it was held that the doctrine did not apply to physicians, it will be found that there was no other testimony from which negligence might be inferred. As, for example, in the case of Stemons vs. Turner, 117 Atl. 722, the Supreme Court of Pennsylvania held that the doctrine does not apply in X-ray cases, and sustained a demurrer to the court's charge on the ground that:

"This charge applied the rule of res ipsa loquitur to the case and permitted the injury to plaintiff, and nothing else, to speak the negligence."

And the court said further:

"While the judge charged that there could only be a recovery if defendant was negligent, nowhere does he point out what the specific negligence was but permitted it to be inferred from the injury alone."

In the case of Nixon vs. Pfahler, 124 Atl. 130, the doctrine was not applied, and the court said:

"Plaintiffs' statement in general terms charged negligent construction, operation, etc., of the apparatus (an X-ray machine by which the photographs were · taken). At the trial no evidence of negligence was offered, plaintiffs resting their case solely on the proof of the accident."

And further, in the same case, the court said:

"Undoubtedly the negligence of a physician may be shown by circumstantial evidence as it may in other cases; but nothing appears here except the happening of the accident which, as above stated, is insufficient."

We are cited to no case and we have not been able to find any where it has been held that bad results could not be considered as a circumstance along with other testimony in determining the question of negligence.

On the contrary, it was held in the case of Doyle vs. Owen, 150 Ill. 111, that:

"In an action for malpractice the jury has a right to consider the bad results in connection with all the other evidence in arriving at the fact as to whether negligence has been proven against a surgeon."

In the case of Hickerson vs. Meely, et al., 54 S. W. 842, the court said:

"Evidence showing that after a broken ankle was reset the ankle and foot were crooked and the ankle joint stiff tended to prove negligence on the part of the physician in replacing the broken bone and should have been submitted to the jury."

In Pack vs. Cochran, 86 S. E. 934, it was held that:

"In determining whether a surgeon has used reasonable care and skill in an operation, the jury may consider the place of the operation, the circumstances surrounding it, the defendant's situation in respect thereto, and all evidence which throws light on the matter."

In Hunter vs. Burroughs, 123 Va. 113, 96 S. E. 360, it was held that the bad result of an X-ray treatment, while a circumstance to be considered on the issue of negligence, was not of itself sufficient to show negligence.

We find the rule stated thus in 21 Ruling Case Law, page 406:

"The fact that the treatment of a case resulted unsuccessfully is not sufficient evidence to prove negligence or lack of skill; nor does it even raise a presumption of such; but it may be used in evi-

dence against a physician. Alone, it means nothing; but connected with other facts it may help to prove negligence."

The testimony of the experts in this case abundantly shows and, in fact, it is admitted that if an X-ray machine is properly adjusted and handled no harmful results will ordinarily follow; but, on the contrary, that if the machine is improperly handled dangerous results may be expected.

In arriving at the question as to whether the defendants were negligent, we have considered the fact of the burn not as proof of defendants' negligence but only as a circumstance in connection with the positive direct testimony of Mr. Smith that the patient's body was placed against the machine and that she was exposed altogether thirty or thirty-five minutes, which, according to the testimony of all the experts, constitutes negligence on the part of the operator of the machine.

Dr. Lett testified that he and his partner, Dr. Hardy, used certain factors in administering the rays to Mrs. Smith. But the expert radiologists called by defendants testified that if such factors had been used the patient would not have been burned. She was burned; so the fact of the burn may be considered as a circumstance from which inference of negligence may be drawn.

Not only that; the testimony of Dr. Lett is materially weakened if not destroyed by that of the experts.

Again, Mr. Smith says that the patient was exposed for some thirty or thirty-five minutes and that the machine was placed against the body. The experts say that would be an improper exposure and that if such exposure was made a burn was an inevitable result. There was a burn; therefore, the testimony of Smith is strongly corroborated by that of the experts.

The scale, therefore, breaks strongly in favor of the plaintiff, and we hold that defendants were guilty of gross negligence.

In reaching this conclusion, we have considered all the testimony together; the fact that the X-ray machine, when properly adjusted and carefully handled, is a harmless agency; that when improperly used and carelessly handled its use is fraught with danger; that the machine was controlled and operated by defendant; that a severe burn was inflicted, which experts say could not have been reasonably expected under proper handling of the machine; and the testimony of Dr. Lett that he used the proper factors and that of Mr. Smith that he did not.

Considering all these facts and circumstances, the conclusion, we think, is irresistible that the machine was either improperly handled or that it was carelessly and negligently handled.

## ON THE QUANTUM OF DAMAGES

Plaintiff sued for $78,732.00. The lower court awarded him $10,000.00. That award is amply supported by the evidence. We are not disposed to increase it.

For the reasons assigned, it is therefore ordered that our former decree be set aside, and it is now ordered and decreed that the judgment of the lower court, from which defendants appealed, be affirmed with costs.

REYNOLDS, J., concurs.

WEBB, J., dissents, and adheres to the original opinion.