Argued February 21; affirmed March 21, 1933.

# KING *v.* DITTO ET UX.

(19 P. (2d) 1100)

*James Arthur Powers,* of Portland (Senn & Recken, of Portland, on the brief), for appellants.

*Frank J. Lonergan,* of Portland (Lonergan & Wagner and Neal R. Crounse, all of Portland, on the brief), for respondent.

BELT, J. This is an action to recover damages for personal injuries sustained as a result of an alleged improper use of an X-ray machine. Plaintiff employed the defendants, who are duly licensed physicians and surgeons, to remove a needle which had become imbedded in her right hand.

Plaintiff alleged, and there was evidence tending to show, that the defendants were negligent in exposing her hand to X-rays in such manner as to result in a serious and permanent injury. Plaintiff testified, in substance, that, in accordance with the direction of the defendants, she held her hand in front of the X-ray machine at a distance of 10 inches for a period of from

15 to 20 minutes and that, after a lapse of five or six minutes, the X-ray machine was again used five or six times for the same length of exposure. Drs. Ralph C. Walker and Thomas W. Ross, who are specialists in X-ray diagnosis and therapy, testified, in answer to hypothetical questions, that such use of the X-ray machine, without filter and using four milliamperes of electric current, would result in overdosage. These doctors further testified that the injury of which plaintiff complains was the result of an X-ray burn.

The defendants, who have been engaged for many years in the practice of their profession at Rainier, Oregon, denied the negligence charged and that the hand of the plaintiff was injured through the use of the X-ray machine. Dr. J. F. Ditto admitted that he had made a fluoroscopic examination five or six times on the day in question, but asserted that at none of these times was there a greater exposure than 10 seconds. He said, "We could not use the fluoroscope 15 or 20 minutes at a time. It would not last that long. It would blow the tube". His wife, the other defendant, admits that she aided her husband in the operation to remove the needle and that she also used the fluoroscope to determine its location.

The cause was submitted to a jury and a verdict returned in favor of the defendants. On motion of the plaintiff, based on "error in law occurring at the trial and excepted to by the plaintiff", the trial court set aside the judgment and ordered a new trial. From this order the defendants appeal.

■ Defendants contend that the court erred in granting a new trial, for the reason that the motion failed to specify the ground upon which it was based. Appellants seem to confuse this case with one wherein

the court refused to grant a new trial as was done in *Easton v. Quackenbush,* 86 Or. 374 (168 P. 631); *Fassett v. Boswell,* 59 Or. 288 (117 P. 302); *State v. Kapsales,* 90 Or. 56 (175 P. 433), cited in their brief. The trial court has the inherent power, in the interest of justice, to grant a new trial, even on its own motion, if error was committed which would warrant a reversal on appeal. Every contention which the defendants have made with reference to a new trial has been answered adversely to them in *Timmins v. Hale,* 122 Or. 24 (256 ?. 770), wherein the court said:

"From these decisions [referring to prior decisions of this court] it is now settled law in this state that a trial court is authorized to set aside a judgment and grant a new trial because of some error of law occurring upon the trial as to matters not called to the attention of the court during the trial and as to matters to which no exception was taken. * * * In respect to the necessity of there having been a ruling in the lower court and an exception taken which is requisite to a reversal upon appeal, there is a clear and well-recognized distinction between the power of the trial court on the one hand to set aside a judgment and grant a new trial, and the power of the Supreme Court to reverse a judgment upon appeal, for it has been repeatedly held by this court, that it is not error alone, but error legally excepted to that constitutes grounds for reversal: * * *"

As stated in *Obermeier v. Mortgage Co.,* 111 Or. 14 (224 P. 1089):

"The trial court has inherent power to grant a new trial and whenever the court timely discovers that error has been committed to the prejudice of a party it may correct the error by setting aside the judgment and granting a new trial, either upon its own motion or upon motion by a party and upon grounds not specified in the motion: De Vall v. De Vall, 60 Or. 493, 500, 501

(118 Pac. 843, 120 Pac. 13, Ann. Cas. 1914A, 409, 40 L. R. A. (N. S.) 291); Rudolph v. P. R. L. & P. Co., 72 Or. 560, 569 (144 Pac. 93); Smith Typewriter Co. v. McGeorge, 72 Or. 523 (143 Pac. 905); Frederick & Nelson v. Bard, 74 Or. 457, 461 (145 Pac. 669); Archambeau v. Edmundson, 87 Or. 476, 487 (171 Pac. 186). It is not necessary for the court to specify in the order granting a new trial the grounds or reasons for the same: Cathcart v. Marshfield, 89 Or. 401, 405 (174 Pac. 138)''.

The new trial was granted because of erroneous instructions. In determining whether the court erred in granting a new trial, we shall, in the light of the above authorities, consider the instructions in question, even though it be assumed that no proper exception was taken. The jury was instructed in part as follows:

### I.

''There is another rule of law to which the court wishes to call your attention. A physician or surgeon practicing his profession is not liable for errors or mistakes of judgment. A professional man is employed to exercise his best judgment and honest opinion in the treatment of a case. If he does that then he has done all that the law requires. The mere fact that a bad result may follow or the mere fact that the patient does not improve or does not recover is not evidence that the doctor or surgeon has been guilty of malpractice. So in this case if in the removal of this needle the defendants exercised their best judgment and their honest judgment and did what they thought was proper, then merely because the result may not have been satisfactory would not make them liable. When they undertook to remove this needle they were not liable for mistakes or errors of judgment, and the mere fact that the hand may have been burned, if it was burned, by the X-ray, and court expresses no opinion upon that question, is no evidence that these defendants have been guilty of malpractice''.

## II.

"These defendants are not to be judged by the standards of care which are used by doctors or surgeons in all localities, where modern conveniences and assistance are easily secured. They are only to be judged by the standard of care which is exercised by physicians and surgeons in localities like Rainier and similar localities. The physician or surgeon practicing in rural communities of our state is not held to that same degree of care to which a physician or surgeon is held who practices in a large city. The standard of care is always that care which is exercised by physicians and surgeons in cities of like localities".

## III.

"I will state to you that if you find that the defendants, when they undertook to remove this needle at Rainier on the 21st of January, 1929, used and exercised that degree of care which is ordinarily used by physicians and surgeons in the same or like localities, and if you find that while undertaking to remove this needle these defendants used their honest and best judgment as to the method to be pursued, then I instruct you that they would not be liable in this case, regardless of what the result may have been".

## IV.

"In considering whether or not these defendants used that degree of care which is usually and ordinarily exercised by physicians and surgeons in like localities you may take into consideration the surrounding circumstances. You may take into consideration the fact that these people were acquainted, where they lived, and you may take into consideration the place where the treatment was accorded, the size of Rainier, and you may take into consideration the experience of the defendants, the time they had used the X-ray machine, and all such matters, and then, based upon all those facts connected with this transaction you may consider whether or not these defendants used that degree of care which is usually and ordinarily exercised by physicians and surgeons in like localities".

Before stating the law applicable to the above instructions, it is important to consider the precise issues of fact. This is not a case of the negligent use of an X-ray machine in administering treatment to a patient. Neither are the defendants charged with negligence in performing the operation to remove the needle. The issues were: Did the defendants fail to use reasonable care and diligence in the use of the X-ray machine— i. e., was the plaintiff subjected to an over-dosage of electric current? If this question be answered in the affirmative, the next logical inquiry would be: Was such negligence the proximate cause of the injury of which plaintiff complains?

If the exposure was as contended by the plaintiff, it appears from the undisputed evidence that such use of the X-ray machine would be improper and not in keeping with the universally accepted practice in the profession. Furthermore, it appears beyond contradiction that if the X-ray machine was thus used an injury would result. It was the contention of the defendants that they did not subject the plaintiff to an X-ray over-dosage and that the condition of plaintiff's hand was due to an infection not caused by any negligent act on their part.

It is well established in this jurisdiction, as elsewhere, that a physician and surgeon is not a guarantor of results. If such were the rule there would be few who would have the temerity to combat the ills by which mankind is afflicted. Ordinarily he does, however, impliedly contract that he will exercise that degree of skill and care usually possessed and exercised by those engaged in the same line of practice in similar localities. As a general rule the degree of care and skill depends somewhat upon locality and the ad-

vanced state of medical and surgical science at time services to patient were rendered. Due care in a lumber camp might be regarded as gross negligence at John Hopkins or at a Mayo clinic. What might have been considered due care 20 years ago would be gross negligence today. Those engaged in the practice of this noble profession must recognize that medicine and surgery is a progressive science. 21 R. C. L. 384.

Physicians and surgeons might reasonably differ as to what is a proper use of the X-ray for treatment purposes, but there was no disagreement as to an improper exposure in this case if it be assumed that the testimony received in behalf of plaintiff is true. Indeed, as stated in *Ballance v. Dunnington,* 241 Mich. 383 (217 N. W. 329, 57 A. L. R. 262), wherein the patient claimed his foot was exposed to the X-ray for two hours and a half except for short intermissions: "Even the merest tyro would know (such exposure) was improper". The status of the X-ray relative to time of exposure, especially when not used for treatment, has become so fixed and exact that physicians and surgeons are cognizant of the same whether they practice at Pumpkin Center or in New York City.

■■ We think it would be negligent for a surgeon to perform an operation without sterilization of instruments whether it occurred in the city of Portland or in the city of Rainier. Likewise, it would be negligent to expose a patient to X-rays for the length of time claimed by plaintiff, regardless of the locality in which the doctor was practicing: *Giles v. Tyson* (Tex.) 13 S. W. (2d) 452. As stated in the well considered case of *Evans v. Clapp* (Mo.), 231 S. W. 79:

"It would seem that the ordinary care required in the use of the X-ray agency (a dangerous thing if not properly used) would not be quite subject to the dis-

tinction usually made between ordinary medical practice in a rural and in a city community, for the standard of care in the use of X-ray machines must be derived from among the users thereof, and the term 'similar localities' must, in this connection, have a somewhat general and relative meaning so as to include other users of such machines who possess the ordinary proficiency in, and acquaintanceship with, the use of that agency which obtains in similar localities or in the same section of country''.

The above instruction which we have numbered II is correct as a statement of the general rule, but as applied to the particular facts under consideration it was, in our opinion, misleading and prejudicial. Plaintiff was entitled to an instruction to the effect that the defendants, in the use of the X-ray machine, were to be measured by the standard of care, skill and diligence that would have been exercised by a physician and surgeon of ordinary care, skill, and diligence, under the same circumstances and conditions, regardless of locality.

■ The authorities are in conflict as to whether negligence may be inferred from the mere fact in itself that an X-ray burn was sustained by a patient. In the following jurisdictions the res ipsa loquitur doctrine is applied: *Holt v. Ten Broeck,* 134 Minn. 458 (159 N. W. 1073, Ann. Cas. 1918E, 256); *Jones v. Tri-State Tel. & Tel. Co.,* 118 Minn. 217 (136 N. W. 741, 40 L. R. A. (N. S.) 485); *George v. Shannon,* 92 Kan. 801 (142 P. 967, Ann. Cas. 1916B, 338); *Shockley v. Tucker,* 127 Iowa 456 (103 N. W. 360); *Lewis v. Casenburg,* 157 Tenn. 187 (7 S. W. (2d) 808, 60 A. L. R. 254); *Johnson v. Marshall,* 241 Ill. App. 80. In the instant case it is not necessary to invoke such doctrine as there is testimony tending to show an improper exposure. Under this state of the record, we think the jury would

be warranted in considering the alleged X-ray burn, together with the evidence relative to time of exposure, as evidence of negligence.

A similar conclusion was reached in *Lett v. Smith,* 6 La. App. 248. In that case the court refused to infer negligence from the mere fact that an X-ray burn occurred, but said:

"* * * where * * * there is direct evidence that the operator of the X-ray machine did not use the approved formula, and where it is shown beyond question, as here, that the X-ray machine, when properly adjusted and carefully handled, is a harmless agency, and that the administration of the rays under proper formula will not ordinarily produce bad results, the court may consider the fact of the injury as a circumstance along with the other testimony in determining the question of negligence".

■ In *Hunter v. Burroughs,* 123 Va. 113 (96 S. E. 360), the court adhered to the universally accepted rule that a bad result, in itself, was no evidence of negligence, but that such result, together with all of the other facts and circumstances of the case, may warrant a jury in inferring negligence. The court, in commenting on numerous authorities cited in support of the proposition that "no weight whatever, however slight" could properly be given to a bad result, said:

"A careful examination of all of them discloses, however, that none of them holds that no weight whatever, 'however slight', is to be given to a bad result in a case such as that before us. The extent of their holding is that the result, however bad, is, of itself alone, insufficient evidence to establish the unskillfulness or the negligence of a physician in such a case as that in judgment".

Also to the same effect see *Fox v. Mason,* 139 Va. 667 (124 S. E. 405).

If the plaintiff had employed a surgeon to remove a growth from his scalp and the surgeon, in undertaking such operation, had allowed the knife to slip and cut off the ear, would it be contended that such result could not be taken into consideration, with all the facts and circumstances of the case, to determine whether or not the surgeon was negligent?

We conclude that, while the instruction of the court that "the mere fact that the hand may have been burned * * * is no evidence that these defendants have been guilty of malpractice" is technically correct, it might well have misled the jury into the belief that the X-ray burn could not be taken into consideration along with the other facts and circumstances of the case. It should have been amplified in keeping with the law as above stated.

■ Likewise, the same may be said concerning the instruction of the court that "A physician or surgeon practicing his profession is not liable for errors or mistakes of judgment". True, a physician and surgeon is not liable for error of judgment if the same is consistent with the exercise of reasonable care and diligence, but, if the defendants, in the use of the X-ray machine, failed to follow the formula relative to time of exposure universally accepted by the profession it will not do for them, in order to avoid liability, to say "We exercised our best judgment". To avoid liability, the judgment must be based upon the exercise of reasonable care and skill: *Rayburn v. Day*, 126 Or. 135 (268 P. 1002, 59 A. L. R. 1062). As stated in 21 R. C. L. 391:

"It is obvious that an exercise of judgment is not really bona fide and is no protection to him, unless it is founded on his intelligence, skill, knowledge and care".

Also see Shearman & Redfield on the Law of Negligence (5th Ed.) § 612, wherein it is stated:

"A physician, like an attorney, is not answerable in a given case for the errors of an inlightened judgment; but also, like an attorney, he cannot interpose his judgment contrary to that which is settled. He must apply, without mistake, what is settled in his profession. He cannot try experiments with his patients to their injury".

The instructions, considered in their entirety, are subject to criticism, in that there was submitted to the jury the question as to whether the defendants exercised reasonable care and skill in the removal of the needle from the hand of the plaintiff, whereas the only issue in the case is whether they were negligent in the use of the X-ray machine, and, if so, whether such negligence was the proximate cause of the injury.

After a careful examination of the record, we think the trial court was warranted in setting aside the judgment in this case and granting the plaintiff a new trial. It follows that the order from which this appeal is taken is affirmed.

RAND, C. J., ROSSMAN and KELLY, JJ., concur.