Bobbie J. GREENE,
*Appellant,*

*v.*

LEGACY EMANUEL HOSPITAL AND
HEALTH CARE CENTER,
an Oregon corporation,
*Defendant,*

*and*

Cheryl L. NESLER, M. D.,
*Respondent.*

(9707-05788; CA A102423)

997 P2d 265

J. Michael Alexander argued the cause for appellant. With him on the briefs was Burt, Swanson, Lathen, Alexander & McCann, P. C.

Nancy S. Tauman argued the cause for respondent. With her on the brief were Nelson L. Walker, and Hibbard, Caldwell & Schultz.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff brought this action asserting claims of negligence against defendants, Dr. Cheryl Nesler and Legacy Emanuel Hospital (Legacy). The trial court granted Legacy's ORCP 21 motion to dismiss plaintiff's complaint and entered judgment in its favor on plaintiff's claims. Thereafter, the trial court granted Nesler's motion for summary judgment on the ground that plaintiff's negligence claims were barred by the applicable statute of limitations. ORCP 47. Plaintiff appeals only the grant of summary judgment, contending that the trial court erred by ruling, as a matter of law, that the statute of limitations had run before the commencement of plaintiff's action. We view the evidence in the light most favorable to plaintiff, draw all reasonable inferences in her favor, and hold as a matter of law that the statute ran before she filed her action.

According to plaintiff's demand letter to defendants, plaintiff went to Legacy on July 26, 1995, on an outpatient basis for a scheduled abortion. Plaintiff underwent general anesthesia for the dilation and evacuation procedure that took place in the operating room. On examination of plaintiff's uterus, Nesler determined that the fetus was approximately 18 weeks old. Nesler inserted ring forceps, grasped a solid piece of tissue and removed it. At that point, Nesler observed that the tissue was "rectal epiploica," or, in other words, tissue from plaintiff's bowel or colon. That observation told Nesler that she had perforated plaintiff's uterus and colon with her forceps. A subsequent ultrasound revealed that previous cesarean sections had resulted in multiple adhesions and an unusual placement of plaintiff's uterus. Nesler completed the evacuation of the uterus while other physicians inspected the bowel and repaired the perforations to the uterus and colon. After the completion of a six-hour surgery, plaintiff remained hospitalized for 11 days. Her affidavit concedes that, after her surgery, she "was aware that a complication had occurred" that required her continued hospitalization.

On August 9, three days after leaving the hospital, plaintiff consulted with an attorney. On November 10, 1995, Legacy provided plaintiff's medical records that the attorney

had requested. Plaintiff does not contend that the records failed to disclose that plaintiff's colon had been perforated during the outpatient procedure. After plaintiff received medical treatment the following February for conditions related to the perforation of her colon, her attorney made a demand for damages on Nesler and Legacy. In June 1997, physicians hired by plaintiff evaluated her medical records and opined that Nesler's conduct was outside the requisite medical standard of care for abortions. Subsequently, plaintiff filed her original complaint for negligence against Legacy and Nesler on July 24, 1997. Although plaintiff served a summons and the initial complaint on Legacy, it was not until November 14, 1997, that plaintiff served Nesler with an amended complaint that was later filed on November 17, 1997.[1]

ORS 12.110(4) provides the applicable statute of limitations for plaintiff's claim:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

When plaintiff's action is deemed commenced under ORS 12.110(4) is controlled by ORS 12.020:

"(1) Except as provided in subsection (2) of this section, for the purpose of determining whether an action has been commenced within the time limited, an action shall be deemed commenced as to each defendant, when the complaint is filed, and the summons served on the defendant, or

---

[1] For purposes of her motion, Nesler argues that service of process was first completed on her on November 14, 1997. We will assume that fact for purposes of this decision.

on a codefendant who is a joint contractor, or otherwise united in interest with the defendant.

"(2) If the first publication of summons or other service of summons in an action occurs before the expiration of 60 days after the date on which the complaint in the action was filed, the action against each person of whom the court by such service has acquired jurisdiction shall be deemed to have been commenced upon the date on which the complaint in the action was filed."

Because more than 60 days passed between the date plaintiff filed her action and the date of service on Nesler, the earliest plaintiff's action could have been commenced was on November 14, 1997, when she served Nesler.

■■    The issue is whether plaintiff commenced her action "within two years from the date when [her] injury [was] first discovered or in the exercise of reasonable care should have been discovered." ORS 20.110(4).[2] Injury within the meaning of ORS 12.110(4) "consists of three elements: (1) harm; (2) causation; and (3) tortious conduct." *Gaston v. Parsons*, 318 Or 247, 255, 864 P2d 1319 (1994). Plaintiff agrees that, before or by the time that she left the hospital, she knew that she had suffered physical complications from the surgery and that Nesler's actions had caused those complications. However, she argues that, "she did not even obtain her medical records until November [1995] and did not have any reasonable basis to believe that there had been any tortious conduct by the doctor until May of 1996 or later."[3] She further asserts that the evidence at summary judgment does not demonstrate, as a matter of law, when she should have discovered the tortious nature of Nesler's conduct. Nesler responds that plaintiff had notice of any tortious conduct in August 1995 and that the statute of limitations began at that time, rendering her complaint untimely.

In *Gaston* the court explained:

---

[2] Plaintiff does not contend that the timely service on Legacy also effected service on Nesler under the language of ORS 12.020.

[3] Plaintiff's complaint also includes informed consent claims. Plaintiff concedes that the informed consent claims are barred by the statute of limitations.

"To discover a particular element of legally cognizable harm, the plaintiff does not need to know to certainty that each particular element exists. The discovery rule is designed to give plaintiffs a reasonable opportunity to become aware of their claim. Actual knowledge that each element is present is not required. On the other hand, a mere suspicion is insufficient to begin the statute of limitations to run. We believe that a quantum of awareness between the two extremes is contemplated by the statute. Therefore, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists.

"We emphasize that this is an objective test. In most cases, the inquiry will concern what a plaintiff should have known in the exercise of reasonable care. In such cases, the relevant inquiry is how a reasonable person of ordinary prudence would have acted in the same or similar situation. Relevant to this analysis will be a plaintiff's failure to make a further inquiry if a reasonable person would have done so. The discovery rule does not protect those who sleep on their rights, but only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered legally cognizable harm.

"* * * Whether a reasonable person of ordinary prudence would be aware of a substantial possibility of tortious conduct is a question of fact that depends upon the nature of the harm suffered, the nature of the medical procedure, and other relevant circumstances. The nature of the harm suffered is important in determining whether a reasonable person would have been aware of a substantial possibility of tortious conduct." 318 Or at 255-56 (citations omitted).

In *Doe v. American Red Cross*, 322 Or 502, 910 P2d 364 (1996), the court applied the rule of *Gaston*. It pointed out:

"The nature of the harm suffered is important in determining whether a reasonable person would have been aware of a substantial possibility of tortious conduct. In many instances, suffering an untoward result after surgery may put a reasonable person on notice of tortious conduct." *Doe*, 322 Or at 513.

Later in its opinion, the court added:

> "*Gaston* holds that a defendant in a summary judgment motion must establish that the plaintiff knew or in the exercise of reasonable care should have known facts which would have made a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) existed. In the ordinary case, that last element will appear as a matter of course." *Id.* at 514-15 (citation omitted).

Here, plaintiff went in for an outpatient abortion and, instead, remained in the hospital 11 days after a six-hour surgery. Her experiences caused her enough concern that she consulted an attorney three days after she left the hospital, who immediately requested her medical records from the hospital. However, she urges that she was not put on inquiry notice until her attorney received her medical records and had an opportunity to have them evaluated by other physicians.

The fact that plaintiff did not have confirmation that Nesler's conduct was outside the standard of care required of physicians until her attorney had occasion to have the medical information reviewed by other physicians does not create a question of fact as to when plaintiff, in the exercise of reasonable care, should have known that Nesler's conduct was tortious. As the court held in *Gaston*, actual knowledge of malpractice is not required; only a "substantial possibility" of tortious conduct must exist. 318 Or at 256. Nor is the statute of limitations not triggered until plaintiff procures expert testimony to support her claim or because her attorney is dilatory in filing an action. *Duncan v. Augter*, 62 Or App 250, 256, 661 P2d 83, *rev den* 295 Or 122 (1983). ORS 12.110(4) protects "only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered legally cognizable harm." *Gaston*, 318 Or at 256. Here, plaintiff was aware that her colon had been perforated during an outpatient procedure that resulted in an 11-day stay in the hospital. Although not all surgical complications in every circumstance will put a patient on inquiry notice as to medical malpractice, our review of the summary judgment record in this case persuades us that a reasonable person in plaintiff's

position would have known of a substantial possibility of malpractice when informed of the nature of the complication. The trial court did not err in ruling that the two-year statute of limitations ran before plaintiff commenced her action.

Affirmed.