Argued and submitted October 25, 1999; resubmitted en banc September 20, reversed and remanded in part; otherwise affirmed November 22, 2000, petition for review allowed April 17, 2001 (332 Or 56)
See later issue Oregon Reports

Jeri L. RUSTVOLD
and David Rustvold,
wife and husband,
*Appellants,*

*v.*

Lee TAYLOR, M.D.,
and Legacy Emanuel Hospital & Health Center,
an Oregon nonprofit corporation,
*Respondents.*

(9709-07241; CA A104181)

14 P3d 675

David R. Kracke argued the cause for appellants. With him on the reply brief was Nichols & Associates. On the opening brief were Craig A. Nichols and Nichols & Associates.

Kelly A Giampa argued the cause for respondent Lee Taylor, M.D. On the brief were Marjorie A. Speirs, Janet M. Schroer, and Hoffman, Hart & Wagner.

Lindsey H. Hughes argued the cause for respondent Legacy Emanuel Hospital & Health Center. With her on the brief was Keating Jones Bildstein Hughes & Yelnosky, P.C.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, and Brewer, Judges.

LANDAU, J.

Edmonds, J., concurring in part and dissenting in part.

**LANDAU, J.**

Plaintiff Jeri Rustvold appeals a summary judgment dismissing her claims for medical malpractice and negligent infliction of emotional distress arising out of a medical incident that she contends left her reasonably in fear of contracting Hepatitis B or HIV. We affirm in part, reverse in part, and remand for further proceedings.

The following facts are not in dispute. Plaintiff underwent a routine rib resection at defendant Legacy Emanuel Hospital & Health Center (Emanuel). In the course of that surgery, the anesthesiologist, defendant Taylor, administered an anesthetic by inserting a syringe into plaintiff's intravenous tubing; the syringe did not pierce plaintiff's skin. While cleaning up after the surgery, Taylor discovered two used syringes on his instrument tray. Both needles had been used to administer the same anesthetic. Taylor could not tell which one had been used on plaintiff, nor could he tell whether he had used the same syringe on a previous patient.

Taylor informed plaintiff that he could not tell whether the needle that he used for her surgery had already been used. He suggested that she be vaccinated for Hepatitis B and that she be tested for HIV. Plaintiff at first refused, but ultimately she underwent at least a portion of a Hepatitis B vaccination schedule and submitted to HIV testing on three occasions. Each time, plaintiff tested negative for HIV, and eventually doctors concluded to a medical certainty that she is not infected with either Hepatitis B or HIV. Doctors also determined that the previous patient whose syringe may have been used for plaintiff's operation was not infected with either Hepatitis B or HIV.

Plaintiff initiated this action for medical malpractice and negligent infliction of emotional distress.[1] In her complaint, she alleged that defendants were negligent in the following particulars:

---

[1] Plaintiff's husband, David Rustvold, also alleged a claim for loss of consortium, but the trial court entered summary judgment dismissing that claim, and no appeal has been taken from that judgment.

"a) In failing to ensure that Plaintiff * * * would not be given medication with a syringe that had previously been used on another patient;

"b) In failing to properly prepare the anesthesia area for the surgery involving Plaintiff * * *;

"c) In failing to properly clean up after the previous surgery;

"d) In giving medication to Plaintiff * * * with a syringe that likely had been used on a prior patient thus exposing Plaintiff * * * to blood born[e] disease; and;

"e) In failing to inform Plaintiff * * * immediately of the fact that it was likely that she had been given medication with a used syringe."

Both Emanuel and Taylor moved for summary judgment, arguing that plaintiff had failed to show either the harm or causation elements of a medical malpractice claim and that her negligent infliction claim fails for lack of physical injury concurrent with the emotional distress.

In support of their motions, Emanuel and Taylor relied on, among other things, an affidavit of an expert witness asserting that, because the syringe did not pierce plaintiff's skin, because there was no more than a 50-percent chance that a previously used syringe was used in her surgery, because of the remote odds of infection even if the previous patient was infected, and because the previous patient was not infected with either Hepatitis B or HIV, there was no reasonable probability that patient had sufficient contact with any prior patient's bodily fluids to transmit any disease whatsoever. In response, plaintiff offered an affidavit of counsel stating that counsel had hired an expert who would testify that defendants were negligent in the particular ways described in the complaint. She also offered portions of her own deposition, in which she testified to the injuries to her arm and shoulders that resulted from the subsequent testing and inoculation.

As an alternative ground for its motion, Emanuel argued that it was not liable as a matter of law because Taylor was an independent practitioner and not an employee whose tortious conduct could give rise to vicarious liability.

The trial court declined to address Emanuel's vicarious liability argument, but it nevertheless granted Emanuel's and Taylor's motions and entered summary judgment dismissing all claims.

On appeal, plaintiff first argues that the trial court erred in entering summary judgment on the medical malpractice claim. According to plaintiff, she has offered evidence of harm resulting from defendants' negligence. She asserts that the emotional distress related to her fear of contracting Hepatitis B and HIV constitutes harm cognizable in a medical malpractice claim. Aside from that, she argues, her medical malpractice claim is supported by evidence of the physical injuries to her arm and shoulders associated with the testing and treatment that necessarily flowed from Taylor's failure to ensure that he used the right syringe. Defendants argue that the fear of contracting a virus is not actionable in medical malpractice without evidence of actual exposure to the virus, and there is no such evidence in this case. As for the injuries to plaintiff's arm during testing and treatment, both defendants summarily discount the injuries as "nominal."

On review of a summary judgment, we examine the evidence in the light most favorable to the nonmoving party to determine whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

The elements of a claim for medical malpractice are: (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) harm that is measurable in damages; and (4) a causal link between the breach and the harm. *Zehr v. Haugen*, 318 Or 647, 653-54, 871 P2d 1006 (1994). At issue in this case is whether the evidence of plaintiff's fear of contracting Hepatitis B or HIV or of her physical injuries experienced during treatment and testing amount to legally cognizable harm.

We begin with plaintiff's emotional distress occasioned by the risk that she may have been exposed to Hepatitis B or HIV. In *Curtis v. MRI Imaging Services II*, 327 Or 9, 956 P2d 960 (1998), the Supreme Court addressed the extent

to which psychological injury is cognizable in a medical malpractice action. Because we conclude that *Curtis* is controlling, we examine it in some detail. At issue was the extent to which the plaintiff could recover damages in a medical malpractice action for his purely psychological reaction to a magnetic resonance imaging (MRI) testing procedure. In his complaint, the plaintiff alleged that the defendant medical professionals were negligent:

> "1. In failing to properly explain the nature of the MRI procedure to the Plaintiff prior to instituting such procedure, particularly in failing to warn the Plaintiff of the possible claustrophobic effects of the MRI;

> "2. In failing to take an adequate medical and psychological history from the Plaintiff, including the history of a pre-existing asthmatic condition;

> "3. In failing to properly monitor the progress of the Plaintiff during the course of the MRI procedure; and

> "4. In failing to promptly terminate the MRI procedure when Plaintiff complained of difficulties with breathing, and indicated a desire for the procedure to end."

*Id.* at 11. The defendants answered and moved for judgment on the pleadings on the ground that, in the absence of an allegation of an actual or threatened physical injury, a claim for negligent infliction of emotional distress is not cognizable as a matter of law. The trial court agreed and allowed the motion.

The Supreme Court reversed. The court explained that, in the context of a claim for medical malpractice, the mere fact that the harm alleged is purely psychological is not dispositive. That does not mean, the court cautioned, that *all* claims for emotional distress in a medical malpractice are cognizable. The court hastened to make clear that only when the applicable standard of care includes a duty to avoid the particular type of psychological harm of which the plaintiff claims will that harm be cognizable:

> "[W]hen the claim is that a medical practitioner breached a professional duty to guard against a specified medical harm, the fact that that harm is psychological rather than physical is not a bar to liability. Our holding should not be

read to mean that medical professionals operate under a general duty to avoid any emotional harm that foreseeably might result from their conduct. In that regard, their duty is no greater than that of the population at large. *But, where the standard of care in a particular medical profession recognizes the possibility of adverse psychological reactions or consequences as a medical concern and dictates that certain precautions be taken to avoid or minimize it, the law will not insulate persons in that profession from liability if they fail in those duties*, thereby causing the contemplated harm."

*Id.* at 15-16 (emphasis added). Turning to the plaintiff's complaint, the court observed that

"[I]t is possible to infer, from plaintiff's specific allegations of negligence, that particular aspects of the relevant standard of care were at issue: a duty to explain the nature of the procedure, to warn of its possible claustrophobic effects, to take an adequate medical history in order to discover any particular physical or psychological sensitivities that might be affected by the procedure, and, finally, to terminate the procedure if the patient begins to experience physical or psychological difficulties."

*Id.* at 14. The key, the court emphasized, is whether the medical professional "operate[s] under a standard of care that includes a specific duty to be aware of and guard against particular adverse psychological reactions or consequences to medical procedures." *Id.* at 14-15. In that case, the allegations of the complaint were sufficient to establish the requisite "specific duty."

 *Curtis* thus establishes the principle that, for the law to recognize purely psychological harm in a medical malpractice case, the plaintiff must establish that there is a duty to guard against that psychological harm. In this case, plaintiff failed to do that.

At the outset, it is important to observe that this case comes to us in a procedural posture that is slightly different from that reflected in *Curtis*. This case was disposed of on summary judgment. The defendants offered uncontradicted evidence that—because the needle did not pierce plaintiff's skin, because of the remote odds of infection even if a previous user were infected, because the previous user was

not, in fact, infected, and because there was, at most, only a 50-percent chance that the previous user's needle actually was used—plaintiff had not been exposed to any disease. Plaintiff offered only an affidavit that she had retained an expert who will testify that defendants' failure to keep the needles separate violated the applicable standard of care, as she detailed in the allegations of her complaint. In other words, she offered no direct evidence that defendants "operate[d] under a standard of care that includes a specific duty to be aware of and guard against particular psychological reactions or consequences" to the medical procedures involved in her operation. *Curtis*, 327 Or at 14-15. The narrow question before us, then, is this: When defendants' conduct did not actually expose plaintiff to any communicable disease, are the allegations of her complaint nevertheless sufficient to support an inference that the applicable standard of care includes a specific duty to avoid causing plaintiff to fear that she will become infected with Hepatitis B or HIV?

In this case, plaintiff makes no argument that her allegations support such an inference. Her sole argument is that, because her emotional distress is a foreseeable consequence of defendants' negligence, that emotional harm should be cognizable. But that is precisely the argument that *Curtis* forecloses: "Our holding should not be read to mean that medical professionals operate under a general duty to avoid any emotional harm that foreseeably might result from their conduct." 327 Or at 15.

The dissent similarly argues that the requisite duty "arises within the ordinary knowledge that a potential exposure to HIV or Hepatitis B causes emotional trauma to any person in plaintiff's circumstances." 171 Or App at 148. According to the dissent, because such emotional trauma is "predictable," we may infer that the standard of care within the applicable medical community includes a duty to avoid such trauma. Once again, however, the argument cannot be reconciled with *Curtis*, in which the Supreme Court plainly stated that something more than the mere foreseeability of emotional trauma is required. We conclude that the purely emotional harm of which plaintiff complains is insufficient to support a claim for medical malpractice.

■ We turn to plaintiff's physical injuries suffered in the course of treatment and testing. Defendants' sole response to plaintiff's assertion that she suffered physical injuries is that

> "[t]he issue in this case * * * is not the nominal damages to which plaintiff might be entitled for these tests and inoculations, but the damages which she seeks for fatigue, anxiety and depression * * * from 'fear of possible exposure to HIV or Hepatitis B.' "

Defendants thus do not take issue with the existence of plaintiff's physical injuries; rather, they assert that they are of no consequence, apparently because they are too insignificant. Defendants cite no authority for their proposition that, as a matter of law, we may simply disregard plaintiff's assertion that she suffered physical injuries in the course of testing and treatment. In that regard, we note that, under the summary judgment rule in effect at the time the trial court ruled on this matter, it was defendants' burden affirmatively to prove that plaintiff suffered no legally cognizable injury. *Tozer v. City of Eugene*, 115 Or App 464, 467, 838 P2d 1104 (1992). Defendants having failed to do so with respect to the alleged physical injuries, we conclude that the trial court erred in allowing summary judgment on the medical malpractice claim insofar as it claims damages for plaintiff's physical injuries.

■ Defendant Emanuel argues that, even if there is an issue of fact as to the physical injuries that plaintiff suffered, it is entitled to summary judgment as a matter of law, because Taylor was not its agent, and vicarious liability therefore will not apply. As we have noted, however, the trial court declined to reach that issue. Under the circumstances, the trial court should have the first opportunity to evaluate the summary judgment record as to the factual predicates for the argument. *See Anderson v. Carden*, 146 Or App 675, 689, 934 P2d 562, *rev den* 326 Or 68 (1997) ("Although we may affirm the trial court on grounds different from those relied on by the trial court, in this case, the trial court's order expressly provided that it did not consider [the alternative ground]. Under the circumstances, the trial court should

have the opportunity in the first instance to evaluate the parties' factual assertions.").

Plaintiff next argues that the trial court erred in entering summary judgment on her claim for negligent infliction of emotional distress. She acknowledges that the claim ordinarily requires proof of a concomitant physical injury; she argues that the injuries to her arm and shoulder in the course of treatment and testing suffice. In the alternative, she argues that her case falls within a recognized exception to the physical injury requirement. According to plaintiff, defendants' actions infringed on a legally protected interest apart from her interest in being free from foreseeable injury. That interest, she contends, is rooted in her relationship with her doctors, who have a duty to protect her from all consequences of their negligence. Defendants counter that plaintiff's physical injuries are insufficient to support a claim for negligent infliction of emotional distress, because they occurred long after the event that supposedly gave rise to the emotional distress. As for the applicability of the "legally protected interest" exception to the physical injury rule, defendants argue that plaintiff asserts no more than the right to be free of the foreseeable consequences of negligent conduct, which is insufficient to satisfy the exception.

■ Oregon courts generally do not permit the recovery of damages for negligent infliction of emotional distress in the absence of evidence of physical injury. *Curtis v. MRI Imaging Services II*, 148 Or App 607, 612, 941 P2d 602 (1997), *aff'd on other grounds* 327 Or 9, 956 P2d 960 (1998). The physical injury requirement " 'affords the desired guarantee that the mental disturbance is genuine.' " *Wilson v. Tobiassen*, 97 Or App 527, 532, 777 P2d 1379, *rev den* 308 Or 500 (1989) (quoting Prosser and Keeton, *Torts* 363 (5th ed 1985)). Thus, to provide that guarantee, the physical injury must be related to the claimed emotional distress in such a way as to demonstrate the validity of the claim.

■ In this case, plaintiff claims to have experienced emotional distress based on her fear of contracting Hepatitis B or HIV following the report that she may have been administered anesthesia with a previously used syringe. The physical injuries on which she relies to establish her entitlement

to damages for the emotional distress occurred long after that, during treatment and testing. She does not claim emotional distress associated with that treatment and testing, only as a result of learning about the possibility of infection during her operation. Thus, the physical injuries on which she relies have nothing to do with the genuineness of her claimed emotional distress and fails to satisfy the physical injury requirement.

The absence of physical injury is not necessarily fatal to plaintiff's claim, however. There are some exceptions to the physical injury rule. Pertinent to the arguments in this case is the exception for actions that infringe on a "legally protected interest" that arises independent of the duty to avoid foreseeable risk of harm. *Phillips v. Lincoln County School District*, 161 Or App 429, 433, 984 P2d 947 (1999). As we explained in *Curtis*:

> "As we understand 'legally protected interest,' * * * that term refers to a sort of 'duty' that is distinct from *Fazzolari*-like foreseeability. The identification of such a distinct source of duty is the *sine qua non* of liability for emotional distress damages unaccompanied by physical injury."

148 Or App at 618 (citations and footnotes omitted). In that case, we held that the pleadings reflected such an independent duty to avoid the possible emotional trauma associated with an MRI procedure. *Id.*

In this case, plaintiff failed to establish the existence of any such duty. Her argument is that her fear of contracting life-threatening diseases is a foreseeable consequence of defendants' negligence. But, as we have noted, that is not enough. Her claim must be predicated on a duty independent of the duty to avoid foreseeable risk of harm.

Plaintiff insists that, under our decision in *Curtis*, the mere fact of the physician-patient relationship itself satisfies the requirement of an independent duty. *Curtis* cannot be read so broadly. In that case, we held that the physician-patient relationship *can* include a specific duty the violation

of which may support a claim for negligent infliction of emotional distress. We did not say that the mere fact of the relationship *always will* include such a specific duty. The physician-patient relationship does not bestow on the patient an absolute right to be free of emotional distress. We conclude that, as a matter of law, plaintiff failed to establish entitlement to damages for negligent infliction of emotional distress and that the trial court did not err in entering summary judgment on that claim.

Judgment dismissing claim for medical malpractice reversed and remanded; otherwise affirmed.

**EDMONDS, J.,** concurring in part and dissenting in part.

The majority's decision to uphold the grant of summary judgment under ORCP 47 in this case as to plaintiff's claims for damages for emotional harm appears to be constructed upon a three-pronged analysis: (1) plaintiff did not controvert defendants' evidence that she was not exposed to any communicable disease when a syringe previously used on another patient was used to administer anesthesia to her. 171 Or App at 136-37; (2) *Curtis v. MRI Imaging Services II*, 327 Or 9, 956 P2d 960 (1998), does not permit recovery for emotional harm in the absence of physical injury except when there is evidence of a standard of care, and its holding compels affirmance in the absence of such evidence. 171 Or App at 136; and (3) plaintiff has not proved that the medical community recognizes a duty to prevent psychological harm under the existing circumstances. 171 Or App 136. I disagree with the majority's analysis for the reasons that follow.

For purposes of the ground asserted for summary judgment on which the majority agrees, defendants do not controvert any of the evidence produced by plaintiff at the summary judgment hearing, nor do they contest for purposes of the motion that they were negligent or that plaintiff suffered emotional harm as the result of her fear that she had contracted HIV or Hepatitis B from defendants' treatment. In substance, they argue only that they had no legal duty to prevent the harm that plaintiff suffered, even in light of plaintiff's evidence.

Thus, for the purpose of determining whether plaintiff suffered cognizable legal harm, the following facts are uncontradicted. After defendants' negligence was discovered, plaintiff "underwent four immunization treatments in an effort to avoid contracting Hepatitis B." Also, since the date of the surgery, she has undergone numerous blood tests for the presence of Hepatitis B and that "[s]o far the results have been negative." Finally, she alleges that she has been tested three times for the presence of HIV since the surgery and that "[s]o far the results have been negative." She seeks compensation for mental anguish suffered after the discovery that the syringe used in her treatment previously had been used in the treatment of another patient. Apparently, the period of time during which she suffered psychological harm includes the time while she was waiting for the results of her tests and the time afterwards. The issue then is whether the law will recognize her claim on these facts.

First, the majority's focus on defendants' affidavit is misplaced. Their affidavit avers that there is no reasonable probability that plaintiff has contracted any disease from the use of the syringe. However, plaintiff does not claim that she has been infected by HIV or Hepatitis B. Rather, she seeks compensation for the psychological harm she suffered because of the anguish of not knowing whether she had been exposed to those diseases. Consequently, defendant Taylor's affidavit establishes a fact that has no legal consequence to plaintiff's theory. The resolution of defendants' motion depends not on the affidavit, but on whether plaintiff's evidence, combined with the allegations of negligence and emotional harm that defendants do not contest for purposes of their motion, present circumstances from which a legally cognizable duty to prevent psychological harm arises.

Second, because *Curtis* is the linchpin to defendants' arguments, a complete understanding of its holding is necessary. *Curtis* is a case in which the trial court entered judgment for the defendants on the pleadings, and the Supreme Court reversed. The plaintiff alleged only psychological injuries arising out of the defendant's administration of an MRI test. The plaintiff alleged that the defendants had failed to warn him of the possible claustrophobic effects of the procedure, had failed to take a history of his preexisting asthmatic

condition, had failed to properly monitor him during the course of the procedure and had failed to terminate the test when he complained of difficulties with breathing. His complaint also alleged that as a result of the defendant's negligent performance of the test, the plaintiff suffers from a post-traumatic stress disorder, an adjustment disorder with depression, a general anxiety disorder and a panic disorder with agoraphobia. The court accepted review of the case "to consider whether, despite its failure to allege any physical injury, plaintiff's complaint nevertheless states a valid claim." *Curtis*, 327 Or at 11.

The court began its analysis by ruling on the adequacy of the plaintiff's complaint:

"Recently, in *Zehr v. Haugen*, 318 Or 647, 653-54, 871 P2d 1006 (1994), this court described the elements that must be pleaded and proved in a medical malpractice claim: (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) a causal link between the breach and the harm. * * * Viewing the pleadings in this case in the light most favorable to the plaintiff (as we are obliged to do in reviewing a judgment on the pleadings issued pursuant to ORCP 21), plaintiff alleges all those elements here."

327 Or at 14 (citation omitted). The court explained:

"Plaintiff has alleged that defendants performed a medical procedure on him, which is conduct that would give rise to a duty running to plaintiff to exercise that degree of care, knowledge and skill ordinarily possessed and exercised by the average provider of that type of medical service. In addition, it is possible to infer, from plaintiff's specific allegations of negligence, that particular aspects of the relevant standard of care were at issue; a duty to explain the nature of the procedure, to warn of its possible claustrophobic effects, to take an adequate medical history in order to discover any particular physical or psychological sensitivities that might be affected by the procedure, and, finally, to terminate the procedure if the patient begins to experience physical or psychological difficulties."

*Id.* The court then turned to the import of plaintiff's failure to allege any physical injury arising from the defendants' procedure:

> "The fact that plaintiff alleges a standard of care that includes duties that specifically are directed at psychological difficulties, such as claustrophobia, rather than solely at physical ones, is not dispositive. Plaintiff is entitled to plead and prove that the distinction between physical and psychological effects is not always consonant with the thinking and conduct of medical professionals. Clearly, at least some conditions and events that the law deems to be purely psychological qualify as medical concerns in the mind of a medical professional. That being so, a medical professional may operate under a standard of care that includes a specific duty to be aware of and guard against particular adverse psychological reactions or consequences to medical procedures. That is what plaintiff has alleged here."

327 Or at 14-15. This paragraph is a reiteration of the court's holding that the plaintiff's pleadings in *Curtis* were adequate to state a claim for psychological harm. It is made in the context of the preceding paragraph that "it is possible to infer from plaintiff's specific allegations of negligence [the] particular standard of care [at] issue." In other words, the appropriate standard of care can be *inferred* from the allegations of fact in the complaint. The allegations of negligence in the plaintiff's complaint in *Curtis* did not allege expressly that the defendants had a specific duty to guard against psychological harm. Rather, they alleged that the defendants failed to warn "of possible claustrophobic effects" and that the plaintiff suffered psychological trauma as a result of the defendants' negligent performance of the test on the plaintiff. The standard of care, the duty to guard against psychological harm that the *Curtis* court found, arose from the factual allegations about the defendants' conduct, not from any pleading language about a specific duty.

In the next paragraph of the opinion, the *Curtis* court identified the issue that is framed as the result of the plaintiff's allegations of fact: "The real question is whether the harm alleged—severe and continuing *psychological* harm—is the kind of harm that the law is prepared to recognize as constituting the 'harm' element in this kind of claim."

327 Or at 15 (emphasis in original). The court identified the issue as one of law; whether the harm alleged by plaintiff is cognizable as a matter of law. In *Stevens v. Bispham*, 316 Or 221, 228, 851 P2d 556 (1993), the court had explained that, depending on the case, the question of whether harm occurs may be a question of fact or a question of law:

> "When we speak of 'harm' in the sense in which we will discuss it hereafter, we are referring to something more than the fact that a plaintiff has been convicted when he or she should not have been. Obviously, any such event is 'harm' in the common meaning of that term, when it occurs. Rather, we are speaking of 'harm' in the legal sense, *i.e.,* a collection of facts that the law is prepared to recognize as constituting the 'harm' element of a claim for professional negligence."

By framing the issue in this manner, the *Curtis* court set the stage for deciding as a matter of law whether the plaintiff's complaint states a valid claim despite its failure to allege any physical injury.

It analyzed the issue by holding:

> "Plaintiff's claim invokes specific duties imposed on a group of medical professionals to guard against recognized *medical* risks that happen to be psychological in nature. It is, in that sense, like a patient's claim against a psychotherapist who violates the relevant standard of care by entering into a sexual relationship with a patient, thereby causing depression or anxiety, or against a physician who inappropriately prescribes a drug that causes or exacerbates a psychological condition."

327 Or at 15 (footnote omitted; emphasis in original). The court's statement is a judicial declaration of a legal standard of care imposed on the medical profession as a result of the facts alleged in the plaintiff's complaint. Again, it is not based on a standard of care allegation in the complaint.

The court explained the reasoning underlying its declaration in the next paragraph and the limitation on its holding:

> "We are persuaded that, when the claim is that a medical practitioner breached a professional duty to guard against a specified medical harm, the fact that the harm is

psychological rather than physical is not a bar to liability. Our holding should not be read to mean that medical professionals operate under a general duty to avoid any emotional harm that foreseeably might result from their conduct. In that regard, their duty is no greater than that of the population at large. But, where the standard of care in a particular medical profession recognizes the possibility of adverse psychological reactions or consequences as a medical concern and dictates that certain precautions be taken to avoid or minimize it, the law will not insulate persons in that profession from liability if they fail in those duties, thereby causing the contemplated harm."

327 Or at 15-16. The court concluded,

"When read in the light most favorable to plaintiff, the complaint alleges that defendants were medical professionals who owed a duty to plaintiff to identify and guard against predictable psychological reactions or consequences—including claustrophobic reactions—to the MRI procedure * * *."

327 Or at 16.

*Curtis* establishes the rule that, under certain circumstances, recovery *can be obtained* for psychological harm resulting from negligence in the *absence* of physical injury. That rule defeats defendants' argument that there must been an actual exposure to HIV or Hepatitis B before plaintiff's claims are cognizable. In addition, a reading of *Curtis* in context demonstrates that *Curtis* does not require that plaintiffs expressly plead and prove a specific duty to be aware of and guard against particular adverse psychological reactions or consequences to medical procedures in order to state a claim. Such a reading would be contrary to existing case law. The court has previously held that a complaint for injuries resulting from negligence may allege either a specific duty to be imposed on the negligent party, *or* facts from which the law would *infer* a duty. *See Hendricks v. Sanford*, 216 Or 149, 158-59, 337 P2d 974 (1959) (holding that "[a] complaint for injuries resulting from negligence should allege what duty was imposed or state facts from which the law would imply [*sic*] a duty and a breach thereof"); *see also Kennedy v. Hawkins*, 54 Or 164, 167, 102 P 733 (1909). *Curtis* makes no reference to changing the previous law. In fact, *Curtis* itself

implicitly refers to such a rule when it says, "it is possible to infer, from plaintiff's specific allegations of negligence, that particular aspects of the relevant standard of care were at issue[.]" *Curtis*, 327 Or at 14. Whether the law imposes a specific standard of care to protect against psychological consequences is for this court to declare, based on the allegations or proof of negligence and the harm resulting therefrom. In other words, courts will decide on a case-by-case basis whether the law will recognize the harm alleged as "legally cognizable harm," and no holding in *Curtis* compels affirmance in this case.

Third, plaintiff's counsel filed an affidavit in this case in which he averred that plaintiff had an expert witness who would testify that plaintiff's anesthesiologist failed to use the degree of care that is used within the medical community in the following particulars:

"a. In failing to insure that [plaintiff] would not be given medication with a syringe that had been previously used on another patient;

"b. In failing to properly prepare the anesthesia area for the surgery involving [plaintiff];

"c. In failing to properly clean up after the previous surgery;

"d. In giving medication to [plaintiff] with a syringe that may have been used on a prior patient thus exposing [plaintiff] to blood born [*sic*] disease; and

"e. In failing to inform [plaintiff] immediately of the fact that it was likely that she had been given medication with a used syringe."

Neither party offered expert testimony about whether a special duty exists to protect against psychological harm under the circumstances here. The question narrows to whether the law will infer a duty. Defendants argue that plaintiff's claim for psychological harm is not cognizable because her fear of exposure to HIV and Hepatitis B is not the kind of harm that the law is prepared to recognize as legally cognizable without actually contracting the disease. However, that is the wrong test. Whether the law will recognize a duty to prevent the kind of harm suffered by plaintiff

depends on whether there is a recognized risk or concern within the medical community about such harm.

Recognized risks or concerns within the medical community for purposes of medical malpractice cases are generally established by expert medical testimony. What is reasonable conduct, *i.e.*, the standard of care required to be exercised, is ordinarily not within the knowledge of the jury. In the typical case, a court would be unable to declare a legal duty to prevent such harm in the absence of expert medical testimony.

"On the other hand, if the jury is capable of deciding what is reasonable conduct without assistance from an expert medical witness[,] no expert testimony is necessary to establish the standard of care. For example, a jury could find a surgeon was negligent without the assistance of expert medical testimony if the surgeon operated without sterilization of his instruments."

*Getchell v. Mansfield*, 260 Or 174, 179-81, 489 P2d 953 (1971). Similarly, the court in *King v. Ditto*, 142 Or 207, 214, 19 P2d 1100 (1933) remarked,

"[w]e think it would be negligent for a surgeon to perform an operation without sterilization of instruments whether it occurred in the city of Portland or in the city of Rainier."

In my view, this is the kind of case that fits into the exception to the general requirement that a duty of care must be established by expert medical testimony. The duty advocated by plaintiff is the duty to prevent the exposure of a patient in a hospital environment to the emotional harm arising from the perception of a possible exposure to HIV or Hepatitis B. That duty arises within the ordinary knowledge that a potential exposure to HIV or Hepatitis B causes emotional trauma to any person in plaintiff's circumstances, at least until the testing period is complete. There is no need for a medical expert to testify to such a duty. That duty is as obvious as the duty to sterilize surgical instruments was in *King*. Plaintiff's resulting emotional harm from the breach of defendants' duty does not depend on whether the diseases are ultimately contracted or not. Rather, the emotional harm occurs while the patient awaits the outcome of the tests. No jury requires the assistance of an expert witness to understand

the depth of anxiety that exists during that time after a patient has been notified that a syringe used for another patient has also been used in his or her intravenous treatment. In sum, the common law exists for these very kind of circumstances. It is an ordinary experience to suffer anxiety while awaiting the outcome of medical tests for any serious medical problem. Here, plaintiff's anguish was caused by defendants' negligence. Her anguish was as predictable as the anguish suffered by the plaintiff in *Curtis* who underwent an MRI. Under the circumstances, this court should have no difficulty inferring from plaintiff's evidence that there is a recognized concern within the medical community about preventing such harm. It follows as a matter of law that a duty exists to prevent the negligent conduct that would produce such harm.

To reiterate the governing legal principles: in the absence of any pertinent legislation, it is for the courts "to define what constitutes legally cognizable harm in a tort case." *Stevens*, 316 Or at 229. The "harm claimed" in this case involves psychological harm, including mental anguish, loss of sleep, loss of enjoyment of life, fear, anxiety, fatigue and depression. "[T]he fact that the harm is psychological rather than physical is not a bar to liability." *Curtis*, 327 Or at 15. The admonition in *Curtis* that no general duty of care exists to protect from emotional harm is inapplicable to these facts. Defendant's liability is not predicated on a principle of general foreseeability as the majority suggests; rather, the conclusion is that a standard of care to prevent emotional harm exists under the circumstances of this case because of the gravamen of plaintiff's claim. Even in the absence of expert medical evidence, it is the peculiar nature of the facts in this case, as understood by ordinary people, that gives rise to a specific duty to protect against the kind of harm suffered by plaintiff. It follows that "where the standard of care * * * recognizes the possibility of adverse psychological reactions or consequences as a medical concern and dictates that certain precautions be taken to avoid or minimize it, *the law* will not insulate persons in that profession from liability if they fail in their duties, thereby · causing the contemplated harm." *Curtis*, 327 Or at 15-16. (Emphasis added.) Accordingly, I would hold that defendants are not insulated from liability

for the psychological harm suffered by plaintiff as a result of their negligence.

Although I concur in the majority's decision regarding plaintiff's malpractice claim insofar as her claim of physical injuries is concerned, I dissent from its ruling dismissing her emotional harm claims.

De Muniz, Armstrong and Wollheim, Judges, join in this dissent.